[Cite as *Doemeny v. Doemeny*, 2026-Ohio-3007.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JILL C. DOEMENY, | : | |
| Appellee, | : | CASE NO. CA2026-02-019 |
| vs. | : | OPINION AND <u>JUDGMENT ENTRY</u> 8/4/2026 |
| EMMERICH JOHN DOEMENY, | : | |
| Appellant. | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR 2023 05 0323

The Lampe Law Office, LLC, and Thomas S. Sapinsley and Stephen J. Otte, for appellee.

Cors & Bassett, LLC, and Michael L. Gay, for appellant.

## O P I N I O N

**M. POWELL, J.**

{¶ 1} Appellant, Emmerich Doemeny ("Husband"), appeals a decision of the

Butler County Court of Common Pleas, Domestic Relations Division, classifying certain

property as marital property rather than his separate property and awarding appellee, Jill Doemeny ("Wife"), $249,300 in spousal support.

## I. Factual and Procedural Background

{¶ 2} The parties were married on September 16, 2012. Husband is a 49 percent shareholder in J&N Distribution and Design, Inc., a family-owned company founded by his parents. Husband's J&N compensation package consists of wages, commissions, bonuses, quarterly dividend income as a distribution of profits based upon his 49 percent shareholder status, and the use of a vehicle. As J&N is a Sub-S corporation, its net income passes through to Husband as his ordinary business income. The dividend income consists of an amount to pay J&N taxes and a J&N profit distribution.

{¶ 3} Prior to their marriage the parties executed a prenuptial agreement (the "Agreement"). Attached and made part of the Agreement were two exhibits listing each party's property interests, liabilities, net worth, and annual income. Pursuant to the Agreement, Husband's interest in J&N is non-marital and his separate property. Husband's J&N dividend income is therefore his separate property. The Agreement defines "property" to include real property, personal property, income from property, appreciation in property, property acquired with the proceeds of any sale or encumbrance of property, and property exchanged, acquired, or otherwise substituted for property. The Agreement provides that "[e]ach party's Separate Property shall be and remain that party's Separate Property, for that party to hold or dispose of as that party deems advisable in that party's sole discretion."

{¶ 4} Article III, Section C of the Agreement ("the non-conversion clause") further provides,

> No Unintentional Conversion of Separate Property to Marital Property. Any time, skill, and effort spent in managing a party's Separate Property and the use of a party's Separate

- 2 -

Property for marital purposes, shall not change the separate character of the property, and shall not create a liability to transfer Separate Property to Marital Property nor from Marital Property to Separate Property. Except as expressly provided by written instrument signed or acknowledged by both parties, a party's Separate Property shall not be converted into Marital Property, community property, or the other party's Separate Property; and a commingling of a party's Separate Property with the other party's Separate Property or with Joint Property, shall not result in the property's conversion to Marital Property, community property, or the other party's Separate Property.

{¶ 5} The parties began experiencing marital issues in 2022. On May 22, 2023, Wife filed a complaint for divorce. The parties separated the following month, June 2023. Husband answered and counterclaimed for divorce, and moved to enforce the Agreement. Following a hearing on the motion, the trial court issued a decision finding the Agreement valid and enforceable. In May 2025, the matter proceeded to a final hearing before the trial court. At issue was the impact of the Agreement on the parties' property division and the award of spousal support. Both parties testified at the hearing. Both presented an expert witness regarding Husband's 2023 gross income for spousal support purposes. Husband sought to establish that two assets not listed in the Agreement—a rental property known as the Olentangy rental property and US Bank account No. 2722—and the parties' 2023 joint income tax refund were his separate property because his J&N dividend income was used for all three assets.

{¶ 6} On October 15, 2025, the trial court granted the parties a divorce on incompatibility grounds, awarded Wife spousal support, and classified and divided their property. The trial court found that the Olentangy rental property, the US Bank account x2722, and the parties' 2023 joint income tax refund were marital property. The divorce decree was journalized on January 27, 2026.

{¶ 7} Husband now appeals, raising five assignments of error. The third and

fourth assignments of error will be addressed in reverse order. Before we proceed, we note that App.R. 16(A)(8) requires an appellate brief to include a conclusion briefly stating the precise relief sought. Although Husband's brief includes a conclusion, it curiously asks this court to *affirm* the trial court's decision. This appears to be a typographical error as Husband challenges several aspects of the trial court's decision.

## II. Analysis

{¶ 8} Assignment of Error No. 1:

THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] IN FINDING THAT HUSBAND'S J&N DIVIDEND INCOME WAS MARITAL WHEN ISSUING [ITS] DECISION AND GRANTING THE DECREE OF DIVORCE.

{¶ 9} Contrary to the caption of this assignment of error, neither the trial court's October 15, 2025 decision nor the January 27, 2026 divorce decree explicitly hold that Husband's J&N dividend income was marital property or not his separate property. Within the assignment of error, Husband mentions the trial court's citation to R.C. 3105.171 as the basis for its property division but does not otherwise articulate or analyze any specific errors the trial court may have made. Rather, Husband's first assignment of error seems to be his articulation of a basic premise upon which his other assignments of error are based. On appeal, Husband challenges the trial court's determination that the Olentangy rental property, the US Bank account x2722, and the parties' 2023 joint income tax refund are marital property (*see* Husband's third, fourth, and fifth assignments of error). Specifically, Husband argues that because those assets were either funded or paid with his J&N dividend income, his separate property under the Agreement, the assets were necessarily his separate property. Wife does not challenge Husband's claim that his J&N dividend income is his separate property. Rather, she argues that the trial court's property division was based upon Husband's failure to trace the source of the funds for these

assets to his J&N dividend income. In light of the foregoing, including Husband's lack of briefing, Husband's first assignment of error is overruled. *See State v. Crawford*, 2024-Ohio-691 (12th Dist.); *State v. Watson*, 126 Ohio App.3d 316 (12th Dist. 1998).

## A. Applicable Law

{¶ 10} This appeal challenges the trial court's interpretation of the Agreement and its determination that the Olentangy rental property, the US Bank account x2722, and the parties' 2023 joint income tax refund are marital property.

{¶ 11} A prenuptial agreement is ultimately a contract entered into between prospective spouses in contemplation, and in consideration, of their future marriage. *Seipelt v. Seipelt*, 2023-Ohio-4468, ¶ 22 (12th Dist.), citing *Gross v. Gross*, 11 Ohio St.3d 99, 102 (1984). As such, the law of contract applies to the interpretation and application of prenuptial agreements. *Fletcher v. Fletcher*, 1994-Ohio-434, ¶ 11. The construction and interpretation of a prenuptial agreement is a matter of law and is therefore reviewed under a de novo standard on appeal. *Hyslop v. Hyslop*, 2022-Ohio-4656, ¶ 16 (6th Dist.), citing *Graham v. Drydock Coal Co.*, 1996-Ohio-393, ¶ 10. *See also Steinke v. Steinke*, 2006-Ohio-4185, ¶ 9 (3d Dist.).

{¶ 12} A court should interpret a contract to carry out the intent of the parties as manifested by the language of the contract. *Menkhaus v. Menkhaus*, 2022-Ohio-2369, ¶ 31 (1st Dist.) (construing the terms of a prenuptial agreement). When the terms of the contract are clear and unambiguous, courts may not create a new contract by finding intent not expressed by the terms. *Id.* at ¶ 32. If a contract, or portions of a contract, are found to be ambiguous, then the courts must resort to principles of contract construction. *Id.* The intention of the parties to the agreement is paramount, and contracts should be interpreted to carry out the intent insofar as it can be ascertained." *Id.*

{¶ 13} In divorce proceedings, a trial court must determine what constitutes marital

property and what constitutes separate property, and then equitably divide the marital and separate property between the spouses in accordance with R.C. 3105.171(B). *Seipelt* at ¶ 11. Marital property generally includes all property acquired by either party during the marriage as well as the appreciation of separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). However, marital property does not include separate property. R.C. 3105.171(A)(3)(b). Under R.C. 3105.171(A)(6)(a)(v), separate property includes any real or personal property that is excluded by a valid prenuptial agreement. The statute further provides that the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, unless its identity as separate property is not traceable. *Peck v. Peck*, 96 Ohio App.3d 731, 734 (12th Dist. 1994), citing R.C. 3105.171(A)(6)(b).

{¶ 14} The party seeking to establish a particular asset as separate property bears the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Zollar v. Zollar*, 2009-Ohio-1008, ¶ 9 (12th Dist.). "This requires more than mere assertion; it demands that the party trace the asset to its separate origin through competent, credible evidence." *Naiman v. Naiman*, 2025-Ohio-1589, ¶ 44 (12th Dist.).

{¶ 15} An appellate court reviews the classification of property as marital or separate under the manifest-weight-of-the-evidence standard and will not reverse a trial court's classification if it is supported by competent and credible evidence. *Id.* This standard of review requires us to consider whether "the greater amount of credible evidence, offered in a trial, supports one side of the issue rather than the other." *Id.* at ¶ 43, quoting *Eastley v. Wolkman*, 2012-Ohio-2179, ¶ 12. In determining whether competent and credible evidence exists, a reviewing court should be guided by a presumption that the findings of a trial court are correct, because the trial judge is best

able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony. *Etter v. Etter*, 2025-Ohio-4512, ¶ 10 (12th Dist.).

## B. The Spousal Support Award

{¶ 16} Assignment of Error No. 2:

THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] IN FAILING TO ADOPT THE PARTIES' INTENT BASED ON THE CLEAR LANGUAGE OF THE PRENUPTIAL AGREEMENT WHEN ISSUING [ITS] DECISION AND GRANTING THE DECREE OF DIVORCE.

{¶ 17} This assignment of error challenges the amount of spousal support Husband must pay Wife.

{¶ 18} The Agreement includes provisions for payment of spousal support based upon the duration of the marriage. As pertinent here, the Agreement requires Husband to pay "Wife spousal support deductible as alimony as follows: . . . fifty percent of his total gross income calculated as of the calendar year prior to the year in which the final decree terminating the marriage is journalized by the court." The Agreement provides that spousal support shall be paid in 12 monthly installments and then terminate. The parties agreed that 2023 was the year upon which to calculate Husband's gross income for spousal support purposes.

{¶ 19} At the time the Agreement was executed, the law provided that spousal support was deductible from the payor's income and includable in the payee's income. However, the United States Internal Revenue Code was amended in 2017 by the enactment of the Tax Cuts and Jobs Act. *Rigby v. Rigby*, 2021-Ohio-271, ¶ 36 (12th Dist.). Pursuant to the Tax Cuts and Jobs Act, the spousal support payment is no longer deductible from the payor's gross income and the payment is not includable as income for the spousal support recipient. *Todd v. Todd*, 2023-Ohio-3677, ¶ 20 (12th Dist.). The

repeal applies to any divorce executed after December 31, 2018. *Rigby* at ¶ 36.

{¶ 20} As stated above, each party presented expert testimony regarding Husband's 2023 gross income. Alan Duvall, Wife's expert, testified that Husband's 2023 gross income was $498,600 based upon Husband's 2023 reported wages of $108,500 and his 49 percent share of J&N's net income. In calculating Husband's gross income, Duvall adjusted J&N's net income of $559,417 by adding back a portion of the depreciation deduction J&N claimed for vehicles it had purchased. Specifically, J&N had purchased three vehicles in 2023 for a total purchase price of $314,282 and had claimed a depreciation deduction of $263,996. Although the deduction was proper, Duvall believed it was excessive and adjusted it to more accurately reflect J&N's 2023 income. Duvall admitted he did not consider the fact that spousal support was no longer deductible from a payor's income and simply determined what Husband's gross income was "on the premise that the Court would apply it to their own formula."

{¶ 21} Michael Wagner, Husband's expert and the parties' accountant, testified that Husband's 2023 gross income was $390,414 based upon Husband's W-2 income of $92,985, and Husband's 49 percent of J&N's taxable net income, $275,435. Regarding the depreciation deduction claimed by J&N for the three vehicles, Wagner acknowledged it was high but a proper business practice used by most of his clients and that he applied an accelerated depreciation to reduce J&N's net income. Wagner also testified that based upon his determination that Husband's 2023 gross income was $390,414, Wife would be entitled to $195,207 in spousal support and that Husband would have enjoyed a deduction of $62,981 based upon the tax law in effect at the time the Agreement was executed.

{¶ 22} Upon carefully considering both experts' testimony, the trial court adopted Duvall's analysis and found that Husband's 2023 gross income was $498,600. Based

upon the calculation formula set forth in the Agreement, the trial court ordered Husband to pay Wife $249,300 in spousal support in 12 equal monthly installments of $20,775 after which spousal support would terminate. The trial court did not address the fact that spousal support is no longer deductible from a payor's income and did not consider it in calculating Husband's spousal support obligation.

{¶ 23} On appeal, Husband argues that the trial court erred in calculating his spousal support obligation without considering the post-Agreement change in tax law regarding the deductibility of spousal support. Husband argues that based upon his expert's calculation of his 2023 gross income, the trial court should have ordered Husband to pay only $132,226 in spousal support. This amount represents $195,207, Wife's 50 percent of Husband's 2023 gross income of $390,414, less the $62,981 income tax deduction Husband would have had but for the change in tax law. We note that while Husband is critical of Duvall's manner of calculating his 2023 gross income, Husband does not explain or analyze how the trial court may have abused its discretion by favoring Duvall's calculation or how the court's determination of Husband's 2023 gross income was against the manifest weight of the evidence. We therefore restrict our analysis to whether the trial court should have adjusted the spousal support it ordered by the income tax deduction Husband would have enjoyed but for the change in tax law.

{¶ 24} We find that the trial court did not err in calculating Husband's spousal support obligation without considering or deducting the income tax deduction Husband would have received but for the change in tax law. The phrase "deductible as alimony" used in the spousal support clause of the Agreement simply reflected the tax law in effect when the parties executed the Agreement in 2012. By the time the parties' divorce decree was journalized in 2026, the change in tax law had been in effect for several years and the trial court was required to apply the law as it now existed. Although Husband asserts

that the purpose of the Agreement was to determine the "net amount" of money he was to pay Wife as spousal support, such intent was not clearly expressed in the language employed by the parties. A provision expressly stating such intent would have been easy to include in the Agreement. Moreover, although the parties assumed, and the Agreement may have assumed, that spousal support would be deductible to Husband, the law is not static but ever evolving. Thus, it does not defy belief that the law regarding deductibility of spousal support could later change to allowing a lesser amount of spousal support to be deductible, to allowing deductibility based upon the payor's income, or as is the case now, to no longer allowing deductibility. Again, a provision addressing a potential change in tax law would have been easy to include in the Agreement. The Agreement's lack of a provision calling for an adjustment of Husband's spousal support obligation were the tax law change is dispositive, and we affirm the trial court's calculation of spousal support based upon Duvall's determination of Husband's 2023 gross income.

{¶ 25} Husband's second assignment of error is overruled.

### C. Classification of the Olentangy Rental Property

{¶ 26} Assignment of Error No. 4:

> THE TRIAL COURT ERRED IN FINDING HUSBAND'S OLENTANGY RENTAL PROPERTY TO BE MARITAL WHEN ISSUING [ITS] DECISION AND GRANTING THE DECREE OF DIVORCE.

{¶ 27} The record shows that the parties had multiple bank accounts during their marriage. In particular, they used two USAA bank accounts, one savings account and one checking account, to pay bills during the marriage. Although these two USAA bank accounts were in Husband's name only, it is undisputed that they were joint marital accounts. Husband testified that his wages and his dividend income were deposited into the parties' USAA marital savings account x5816 until August 2022. The parties bought

the Olentangy rental property in December 2020. It is undisputed that the $2,550 earnest money deposit and the $28,110.19 down payment for the property were both paid from the parties' USAA marital savings account x5816. Based upon the foregoing, the trial court classified the Olentangy rental property as marital property.

{¶ 28} Husband argues that the trial court erred in finding that the Olentangy rental property was marital property because the down payment was paid solely with Husband's dividend income. In support of his argument, Husband cites his testimony that he planned to purchase the Olentangy rental property using dividend income he received in October 2020, and Exhibit DD, the bank statement for USAA account x5816 for October 2020. Exhibit DD shows that $86,000 was deposited in that account on October 13, 2020, and that there was a $28,110.19 wire transfer on October 29, 2020. Husband asserts that the $86,000 transaction was a deposit of his dividend income and that the $28,110.19 down payment was sourced from the dividend income deposit. Husband does not challenge the trial court's finding that the earnest money deposit was sourced from marital funds.

{¶ 29} We find no error in the trial court's finding that the Olentangy rental property is marital property. The Agreement's non-conversion clause parallels the language in R.C. 3105.171(A)(b)(6) that the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property. Though it is undisputed that Husband's dividend income is his separate property under the Agreement, Husband had the burden of proof, by a preponderance of the evidence, to trace the $86,000 deposit in USAA account x5816 to his dividend income. Husband's testimony that the $86,000 deposit was a deposit of his dividend income does not satisfy his burden of proof because such "requires more than mere assertion; it demands that the party trace the asset to its separate origin through competent, credible evidence." *Naiman*, 2025-Ohio-1589, at ¶ 44 (12th Dist.). Husband also cites Exhibit DD; however

the October 13, 2020 entry in Exhibit DD simply states, "$86,000 deposit @ mobile."

{¶ 30} The determination of whether the Olentangy rental property was marital or separate property stemmed not from the immediate source of payment, but upon the ultimate source of the funds. Other than his testimony and Exhibit DD, Husband did not present any documentation tracing the $86,000 deposit to his dividend income. As a shareholder of his family-owned company, Husband should have been able to obtain a statement or some other documentation from J&N clearly indicating that the $86,000 deposit was sourced from his dividend income. In fact, during cross-examination, Husband confirmed that along with his dividend income, he also receives documentation stating that it is dividend income. Husband admitted that although such documentation exists, it was never presented at the hearing. Likewise, the parties' accountant testified that lump sums of money paid as dividend income to Husband over the years could be matched against K-1 forms showing distribution of dividend income. The only dividend income that was traced during the final hearing was the $236,289 dividend income Husband received in 2023 as shown on the parties' 2023 joint federal income tax return, Form 7203. The tracing was done during the testimony of the parties' accountant.

{¶ 31} Furthermore, Exhibit DD shows that the balance in USAA account x5816 was $112,735.64 five days before the October 13, 2020 deposit of $86,000, and $156,433.05 two days before the payment of the $28,110.19 down payment. Pursuant to Husband's testimony, these balances necessarily included marital funds from his wages. And the account clearly included marital funds sufficient to cover the down payment. Even if the $86,000 deposit retained its identity as separate property as alleged by Husband, one cannot discern and Husband failed to prove that the source of the down payment was his dividend income.

{¶ 32} Based upon the foregoing, we find that the exact source of the $86,000

deposit in the USAA account x5816 was not established by Husband by a preponderance of the evidence and therefore, the funds used towards the down payment for the Olentangy rental property cannot be traced to Husband's dividend income. Stated otherwise, Husband not only failed to trace the $86,000 deposit to his dividend income, but he also failed to trace the disbursement of the down payment to his dividend income. The trial court, therefore, did not err in finding that the Olentangy rental property was marital property.

{¶ 33} Husband's fourth assignment of error is overruled.

### D. Classification of US Bank Account No. 2722

{¶ 34} Assignment of Error No. 3:

THE TRIAL COURT ERRED TO THE PREJUDICE OF [HUSBAND] IN FINDING THAT FUNDS IN US BANK ACCOUNT NO. 2722 ARE MARITAL WHEN ISSUING [ITS] DECISION AND GRANTING THE DECREE OF DIVORCE.

{¶ 35} Husband challenges the trial court's classification of US Bank Account x2722 as marital property. In so classifying the bank account, the trial court did not provide any analysis, explanation, or reference to any evidence. It simply held, "The Court finds and the best evidence supports the following bank accounts are marital property: US Bank x2722 with established value of $168,227[.]"

{¶ 36} As stated above, the parties used two USAA joint marital bank accounts, one savings account and one checking account, to pay bills during the marriage. Husband testified that his wages and all of his dividend income were deposited into USAA account x5816 until August 2022 but that he stopped depositing his dividend income into that account in August 2022 when the parties began having marital issues. Wife testified that "[f]rom August of 2022, there was no dividend income going into the USAA."

{¶ 37} The record shows the existence of the John Doemeny Revocable Trust with

Husband as Trustee. Husband testified that the Trust is an estate-planning tool that was originally created by his parents. There are two bank accounts in the Trust's name, a US Bank checking account, and US Bank savings account No. 2722. Husband testified that he opened US Bank account x2722 in August 2022 at his attorney's recommendation when the parties began having marital issues and that once the account was opened, he deposited his dividend income into that account. Husband further testified that no marital funds were ever deposited in that account, and that the account was closed in September 2024 and ultimately replaced with a money market account.

{¶ 38} On appeal, Husband argues that the trial court erred in finding that US Bank account x2722 is marital property. In support of his argument that the account is his separate property, Husband cites Exhibits BB and CCC. Exhibit BB is the bank statements for that account for the time period of August 10, 2022, through September 25, 2024. It shows that large sums of money were regularly deposited into the account. Exhibit CCC is a spreadsheet created by Husband the night before his testimony. The exhibit, titled dividend income, lists sums of money and the dates they were deposited. It also lists the bank accounts in which the sums of money were deposited, to wit, USAA account x5816 from April 2017 through April 2022, and US Bank account x2722, from August 11, 2022, through June 20, 2023.

{¶ 39} We find we cannot review the trial court's finding that US Bank account x2722 is marital property and not Husband's separate property. For this court to be able to conduct any meaningful review of the trial court's classification of US Bank 2722 as marital property, we must be able to discern some basis for the trial court's decision. *Gerdes v. Gerdes*, 2020-Ohio-3405, ¶ 19 (12th Dist.). But as stated above, the trial court did not provide any reasoning or analysis as to why it classified this bank account as marital property, and though it stated that "the best evidence supports" its decision, it did

not identify such evidence. This renders the matter unreviewable on the merits. *Rigby*, 2021-Ohio-271, at ¶ 33 (12th Dist.). "'When . . . analysis and clear reasoning is absent from a trial court's written opinion, it is impossible to review the decision without supplanting the trial court's judgment with our own.'" *Gerdes* at ¶ 20, quoting *Preece v. Stern*, 2009-Ohio-2519, ¶ 14. Therefore, under these limited circumstances, this case must be reversed and remanded for further proceedings. *Gerdes* at ¶ 21.

{¶ 40} On remand, the trial court shall issue a decision that provides an analysis and the supporting evidence as to why it found that US Bank account 2722 was marital property and not Husband's separate property, thereby allowing this court to perform a meaningful appellate review should the need arise.

{¶ 41} Husband's third assignment of error is accordingly sustained to the extent outlined above.

### E. The Parties' 2023 Federal Income Tax Refund

{¶ 42} Assignment of Error No. 5:

> THE TRIAL COURT ERRED IN FINDING THE PARTIES' 2023 FEDERAL INCOME TAX RETURN TO BE MARITAL WHEN ISSUING [ITS] DECISION AND GRANTING THE DECREE OF DIVORCE.

{¶ 43} Based upon their accountant's federal filing status optimization report, the parties filed a joint federal income tax return for 2023. The tax return included Husband's J&N dividend income. The parties were entitled to a $16,999 income tax refund, but Husband unilaterally applied the tax refund to his 2024 income tax liability. Had the parties filed separately, Wife and Husband would have received income tax refunds of $4,565 and $ 3,955, respectively. The trial court found that the 2023 federal income tax refund was a marital asset and credited Wife with one-half of it.

{¶ 44} On appeal, Husband challenges the trial court's finding that the parties'

2023 federal income tax refund is a marital asset. As he did below, Husband asserts that the parties' taxes were paid with his dividend income and therefore, Wife is not entitled to share the 2023 tax refund because it is his separate property.

{¶ 45} Based upon the evidence presented at the hearing, we find that the trial court did not err in ruling that the 2023 income tax refund was a marital asset to be equally divided between the parties. Although Husband asserted during the hearing that the taxes were paid exclusively with his dividend income, he did not present any documentation to corroborate his testimony. "Ohio courts have held . . . that the finder of fact is free to reject self-serving testimony." *Miller v. Miller*, 2025-Ohio-1923, ¶ 60 (5th Dist.). Furthermore, "the trial court was free to disbelieve [Husband's] testimony on this issue, as the assessment of witness credibility is within the province of the trier of fact." *Perrine v. Perrine*, 1996 Ohio App. LEXIS 3605, *2 (9th Dist. Aug. 28, 1996).

{¶ 46} Husband's fifth assignment of error is overruled.

### III. Conclusion

{¶ 47} In conclusion, we sustain Husband's third assignment of error. The matter is reversed and remanded to the trial court to indicate, in sufficient detail, its basis for classifying Husband's US Bank account 2722 as marital property and not his separate property. The judgment of the trial court is affirmed as to all other assignments of error.

{¶ 48} Judgment affirmed in part, reversed in part, and remanded for further proceedings.

BYRNE, P.J., and PIPER, J., concur.

## <u>J U D G M E N T   E N T R Y</u>

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to the finding that US Bank account 2722 was marital property, and this cause is remanded for further proceedings according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 80% to appellant and 20 % to appellee.

*/s/ Matthew R. Byrne, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*